IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| PAULA WILLIAMS RAHMAAN, | ) Civil Action No. 2:08-2909-DCN-BM |
| Plaintiff, | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| WALMART, | ) |
| Defendant. | ) |

This action was originally filed by the Plaintiff in the South Carolina Court of Common Pleas, Charleston County. The case was subsequently removed to this Court by the Defendant on August 20, 2008 based on diversity and federal question jurisdiction, as Plaintiff asserts causes of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et. seq., and the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101, et. seq.

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on May 5, 2009, following which the Plaintiff filed a memorandum in opposition on June 8, 2009. Defendant's motion is now before the Court for disposition.[1]

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

1



**Background and Evidence**[2]

Plaintiff, a current employee of the Defendant, has been employed by the Defendant on and off for much of the past thirty (30) years,[3] during which she has held several positions including cashier, stocker, and greeter. See Plaintiff's Deposition, pp. 24, 28, 30; Complaint, ¶ 18. On February 2, 2003, Plaintiff was injured in a workplace accident, the Defendant approved her worker's compensation claim, and Plaintiff reached "maximum medical improvement" two years later, on January 13, 2005. See Plaintiff's Deposition, p. 30; Exhibit 27; see also Plaintiff's Affidavit, ¶ 5.

After Plaintiff's injury, she could no longer perform the essential functions of the stocker position. See Plaintiff's Deposition, p. 45. Therefore, in October 2003, Plaintiff requested and the Defendant approved a transfer to the Wal-Mart store in Summerville as a cashier. See Plaintiff's Deposition, pp. 45, 144; see also Plaintiff's Affidavit, ¶ 6. At the time of Plaintiff's transfer, Anne McClam, the store manager in Summerville, was not aware of Plaintiff's 2003 work-related injury. See McClam Affidavit, ¶ 5. Although Plaintiff testified that she experienced discomfort and had to take cortisone shots, she worked as a cashier performing the necessary functions of that job until September 2004. See Plaintiff's Deposition, pp. 70-72.

In September 2004, a customer complained that Plaintiff refused to assist her in taking merchandise out of her basket during check-out. See Plaintiff's Deposition, pp. 70, 72-73; McClam

---

[2]The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

[3]Plaintiff attests that she has been employed with the Defendant and Sams Club, a related business, for a total of over seventeen (17) years. See Plaintiff's Affidavit, ¶ 3.

2



Affidavit, ¶ 6. Plaintiff met with McClam and told her that she was having some difficulty performing the required duties of her cashier position due to pain in her back and arm. See Plaintiff's Deposition, p. 70; McClam Affidavit, ¶ 6. As a temporary accommodation, and in accordance with Wal-Mart's policy relating to temporary modified or "light-duty" assignments for Associates with work-related injuries, McClam allowed Plaintiff to stock the candy aisle and other similar items on the "front-end" during her shifts as needed to alleviate any pain. See Plaintiff's Deposition, pp. 28, 87; Plaintiff's Affidavit, ¶ 19; McClam Affidavit, ¶ 8; Exhibit A. Plaintiff would also periodically serve as a greeter and run a register as needed. McClam Affidavit, ¶ 9. Plaintiff was allowed to continue these temporary light duty assignments for almost two (2) years.[4] See Plaintiff's Deposition, pp. 91-95; McClam Affidavit, ¶ 9. During this time, Plaintiff maintained the title and was paid as a "cashier", continued to work full-time, received favorable performance evaluations, and her pay was increased to $15.54 per hour. See Plaintiff's Deposition, pp. 88, 94-95, 170; Deposition Exhibit 28; McClam Affidavit, ¶ 9.

On August 10, 2006, Plaintiff received permanent restrictions from her physician. See Plaintiff's Deposition Exhibit 9. Plaintiff's physician continued the restrictions of not lifting items more than fifteen (15) pounds and no overhead work, but added an additional restriction of requiring alternate sitting, standing, and walking. See Plaintiff's Deposition, Exhibit 9. After learning of Plaintiff's permanent restrictions, McClam met with Plaintiff and explained that, pursuant to the Defendant's policies, Plaintiff would either have to apply for an open and available job

---

[4]On October 19, 2004, Plaintiff's personal physician had released her to return to "regular duty", with restrictions not to lift items more than fifteen (15) pounds and no overhead work. See Plaintiff's Deposition, p. 77; Deposition Exhibit 6. Although the Defendant does not admit receiving a copy of this form, it is undisputed that the temporary duties Plaintiff was performing did not require her to exceed these restrictions during this time. See discussion, supra.

3



compliant with her permanent restrictions or request an ADA accommodation from the Defendant. See McClam Affidavit, ¶ 10. Plaintiff then requested, and received, the Defendant's ADA Reasonable Accommodation Packet, containing an ADA Policy Guidelines Summary, A Reasonable Accommodation Request form, and a Release of Medical Information. See Plaintiff's Deposition, pp. 96-100; Deposition Exhibit 7; McClam Affidavit, ¶ 10. Thereafter, on or about September 20, 2006[5], Plaintiff submitted an ADA Accommodation Request for the first time. See Plaintiff's Deposition, pp. 77, 94, 96-100; Deposition Exhibit 8.

Plaintiff's request was denied at the store level on November 10, 2006, because the Defendant found that Plaintiff was not disabled as defined by the ADA. See Plaintiff's Deposition, Exhibit 8; McClam Affidavit, ¶ 11. Although Plaintiff testified that she appealed this decision, Defendant asserts that the decision was not appealed, nor is there a record of an appeal. See Plaintiff's Deposition, p. 104; McClam Affidavit, ¶ 12. During this time, Plaintiff continued to perform her temporary duties, with the understanding that she needed to transfer to a regular position with essential functions that she could perform when such a position became available. See McClam Affidavit, ¶ 12.

On March 22, 2007, Plaintiff received her annual performance evaluation, which covered the previous twelve month period, and received a favorable review in which she was deemed to have met the Defendant's expectations. See Plaintiff's Deposition Exhibit 33; McClam Affidavit, ¶ 14. In the comment section, Plaintiff wrote, "I just want a decision to be made about what position I am going to be in. I don't want to have to be clocked in everyday. Some weeks I'm not on the

---

[5]Plaintiff testified that the date on the Request looked more like August 20, 2006, but she was not sure. See Plaintiff's Deposition, p. 101; Deposition Exhibit 8. In any event, it is undisputed that Plaintiff completed the ADA request form in August or September of 2006.

4



schedule at all."[6]  See Plaintiff's Deposition, pp.  Exhibit 33.

Plaintiff filed a second ADA request for accommodation on July 8, 2007.  See Plaintiff's Deposition, pp. 194-195; Deposition Exhibit 37.[7]  On July 10, 2007, Plaintiff received a response from the Defendant denying her request.  See Plaintiff's Deposition, pp. 192-194; Deposition Exhibit 36.  The Defendant informed Plaintiff that she should seek a transfer to a position that she could perform within her restrictions or apply for a leave of absence while awaiting such a position to become available.  Id.  On August 7, 2007, Plaintiff, with the assistance of the Defendant's personnel department, appealed the decision.  See Plaintiff's Deposition, pp. 194-195; Deposition Exhibit 37.  However, while her ADA appeal was pending, Plaintiff accepted Defendant's offer to reassign her to a full-time position as an exit greeter on August 25, 2007.  See Plaintiff's Deposition, pp. 195-196; Deposition Exhibits 38 and 39.  Plaintiff certified that she could perform all of the essential functions of this position with or without an accommodation.  See Plaintiff's Deposition pp. 198-199, 208-209; Exhibits 38-39.  This position was a single pay grade lower than the position of cashier, decreasing Plaintiff's pay from $15.54 per hour to $14.70 per hour.[8]  See Plaintiff's Deposition Exhibit 39; McClam Affidavit ¶ 18.

On September 17, 2007, Deidre A. Davis, Wal-Mart's Director, ADA Services, wrote a letter to Ann McClam stating that ADA Services had reviewed Plaintiff's appeal for a reasonable

---

[6]Although Plaintiff did not appear on the schedule at certain times, it is not disputed that she was allowed to continue to work in her temporary position during this time on a full time basis.

[7]While the document appears to read August 8, 2007, it is apparent that this is a scrivener's error.

[8]Plaintiff currently remains in that position, with her salary having been increased to $15.23 per hour as of February 4, 2009.  See Plaintiff's Deposition, pp. 20-21; see also Defendant's Memorandum in Support of Summary Judgment, pp. 12-13.



accommodation and denied the request for her to remain in her current position (referring to the temporary light-duty position that Plaintiff had been in until August 25, 2007). See Plaintiff' Deposition Exhibit 41. Davis also wrote Plaintiff to inform her that her request was denied and that she could not remain in the requested position, because it never existed as a permanent position. See Plaintiff's Deposition Exhibit 42.

Prior to receiving Davis' letter, Plaintiff filed an administrative charge of discrimination with the South Carolina Human Affairs Commission (SCHAC) on August 28, 2007. See Plaintiff's Deposition Exhibits 1 and 2.[9] In her administrative charge of discrimination, Plaintiff asserted claims for disability discrimination and retaliation, charging that she "was harassed on March 20, 2007 [, she] was intimidated on June 23, 2007 ], and she] was denied a reasonable accommodation on or about July 2, 2007." Defendant's Exhibit 2, p. 3. While her administrative charge was pending, Plaintiff attests that she was denied a promotion to an unspecified position in the pharmacy in January 2008; see Plaintiff's Affidavit[10], ¶ 39; and also references two other promotions which she alleges she was denied, one in March 2008 and one in June 2008. See Plaintiff's Affidavit, ¶¶ 40-41. Following receipt of a Right to Sue Notice, Plaintiff filed her

---

[9]As South Carolina is a deferral state, Plaintiff could file her administrative claim with SCHAC, instead of with the Equal Employment Opportunity Commission (EEOC). Nelson v. Lockheed Missiles and Space Co., No. 97-1430, 1997 WL 727609 at **1 n. 1 (4th Cir. November 24, 1997); E.E.O.C. v. Hansa Products, Inc., 844 F.2d 191, 192 n. 1 (4th Cir. 1988) (quoting 42 U.S.C. § 2000e-5(e)) ["A deferral state is one 'which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice.'"]; see S.C.Code Ann. § 1-13-90, et. seq., as amended.

[10]The copy of Plaintiff's affidavit filed with the court has not been attested to and ends with paragraph number 42. Although this affidavit is not in proper form to be considered, the undersigned has cited to it because, even assuming arguendo that it is properly before the Court, Plaintiff still has not established any of her claims sufficient to survive summary judgment. See, discussion, infra.

6



complaint in state court on July 15, 2008, which was subsequently removed to federal court on August 20, 2008. See Plaintiff's Deposition Exhibits 1 and 2; see also Complaint.

In her complaint, Plaintiff asserts causes of action for failure to accommodate in violation of the ADA (Count 1), for unlawful discrimination (hostile work environment) (Count 2), and for retaliation in violation of Title VII (Count 3).

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

**I.**

**(ADA Claim)**

Plaintiff asserts in her first cause of action that she was discriminated against on the basis of a disability in violation of the ADA when the Defendant failed to accommodate her disability. Complaint, Count 1. In order to maintain a claim under the ADA, Plaintiff must present evidence to show that 1) she is a qualified person with a disability under the ADA, and 2) that the defendant is subject to suit under that statute.[11] 42 U.S.C. § 12112(a); see Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 467 (4th Cir. 2002), cert. denied, 123 S.Ct. 122 (2002); Tyndall v.

---

[11] The Defendant Wal-Mart does not contest that it is subject to suit under the ADA.



National Education Centers, 31 F.3d 209, 212 (4th Cir. 1994); Hooven-Lewis v. Caldera, 249 F.3d 259, 268 (4th Cir. 2001) [same standards apply to ADA and Rehabilitation Act].[12] In order to have a claim as a "qualified person with a disability under the ADA", Plaintiff must meet three criteria: first, she must have a "disability"; second, she must have been "qualified" for the job in question; and third, the adverse employment action alleged must constitute unlawful "discrimination" based on her disability. E.E.O.C. v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 377 (4th Cir. 2000); Baird ex rel. Baird v. Rose, 192 F.3d 462, 467 (4th Cir. 1999); Tyndall, 31 F.3d at 212.

The term "disability" is defined as a) a physical or mental impairment that substantially limits one or more of the major life activities[13] of an individual, b) a record of such impairment, or c) being regarded as having such an impairment. 42 U.S.C. § 12102(2); Pollard, 281 F.3d at 467.[14] Defendant argues that Plaintiff does not have a "disability" as that term is defined in

---

[12] While some cited cases deal with the Rehabilitation Act rather than the ADA, the standards are the same. Smaw v. Commonwealth of Virginia Department of State Police, 862 F.Supp. 1469, 1474 (E.D.Va. 1994) ["By design, the ADA standards mirror those of the Rehabilitation Act in this case....The emergence of the ADA does not create a new avenue for claims in the area of disability discrimination; rather, the ADA incorporates the existing language and standards of the Rehabilitation Act in this area."]; Hooven-Lewis v. Caldera, 249 F.3d at 268.

[13] A "major life activity" is defined as a basic activity that an average person can perform with little or no difficulty, such as walking, hearing, speaking, learning, breathing, standing, lifting, seeing and working. Appendix to 29 C.F.R. § 1630.2(i); see Bruncko v. Mercy Hosp., 260 F.3d 939, 941 (8th Cir. 2001); Dutcher v. Ingalls Shipbuilding, 53 F.3d 723-727, n. 7 (5th Cir. 1995); Gupton v. Virginia, 14 F.3d 203, 205 (4th Cir. 1994), cert. denied, 513 U.S. 810 (1994) ( Rehabilitation Act).

[14] Although the ADA was amended in 2008 to more clearly define such terms as "disability" and "substantially limits", that Legislation specifically provided that these amendments did not become effective until January 1, 2009. See PUD.L.NO. 110-325, 122 STAT. 3553 (2008); see also EEOC v. Agro Distribution, LLC, 555 F.3d 462, n. 8 (5th Cir. 2009)[ADA amendments do not apply retroactively]; Milhollard v. Summer County Bd. Of Educ., 569 F.3d 562, 565 (6th Cir. 2009)(same); Richardson v. Honda Mfg. Of Ala., LLC, ___ F.Supp. 2d ___, 2009 WL 2171113 at ** 7-9 (N.D.Ala. July 22, 2009); Bateman v. American Airlines, Inc., 614 F.Supp. 2d 660, 670 n. 1 (E.D.Va. 2009).
(continued...)



the ADA, and therefore cannot even pass the initial threshold for presenting a valid claim under that statute. Hence, the initial issue before this Court is whether Plaintiff has presented sufficient evidence to create a genuine issue of fact as to whether her alleged impairment substantially limits a major life activity, whether there is any record of such a substantially limiting impairment, or whether the Defendant regarded her as having such an impairment.

The major life activity at issue in this case is the life activity of working.[15] Taylor v. Federal Express Corp., 429 F.3d 461, 463 (4th Cir. 2005)[Assuming without deciding that working is a major life activity]; Bradley v. Arlington County, Va., 189 Fed.Appx. 164, 166 n. * (4th Cir. May 24, 2006)[same]. However, Plaintiff has presented no evidence sufficient to establish a "disability" in this major life activity. The Plaintiff's doctor permanently restricted her to lifting no more than fifteen (15) pounds, prohibited overhead lifting, and required her to periodically alternate sitting, standing, and walking. See Plaintiff's Deposition Exhibit 9. These limitations do not substantially limit Plaintiff's major life activity of working.

> To be substantially limited in the major life activity of working, . . . one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly,

---

[14](...continued)
Therefore, Plaintiff's ADA claim has been considered under the standard in effect prior to the enactment of the ADA Amendments Act of 2008.

[15]In its memorandum, the Defendant also addresses several activities referenced by the Plaintiff at different times (driving, sex, riding a bicycle, cooking, and cleaning). See Defendant's Memorandum in Support of Summary Judgment, pp. 18-19. However, Plaintiff does not address any of these areas in her memorandum in opposition or contend that they are major life activities for purposes of her claim. See generally Plaintiff's Memorandum in Opposition to Summary Judgment, pp. 11-12 ["The Plaintiff has presented evidence of a perceived disability to a major life activity in the work environment . . . ."]

9



if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

Taylor, 429 F.3d at 464 (quoting Sutton v. United Air Lines, Inc., 527 U.S. 471, 492 (1999); Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 200 (2002)["With respect to the major life activity of *working* [,] [t]he term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities."](quoting EEOC regulations)(emphases and alterations in original)); cf. Taylor, 429 F.3d at 463 [Plaintiff's thirty pound lifting restriction did not preclude him from a broad class of jobs]; see e.g. Pollard, 281 F.3d at 470 [twenty-five pound lifting requirement and not being able to bend repetitively did not constitute a disability in Plaintiff's case]; Williams v. Channel Master Satellite Sys., Inc., 101 F.3d 346, 349 (4th Cir. 1996)[ ][16]; Halperin v. Abacus Technology Corp., 128 F.3d 191, 200 (4th Cir. 1997), *overruled on another point by*, Baird, 192 F.3d at 469 n. 8 (4th Cir. 1999)[ruling that twenty (20) pound lifting restriction was not "disabling" under the ADA].

      Following establishment of Plaintiff's permanent restrictions, she was assigned to a full time position as an exit greeter that she was able to perform with no accommodation being necessary. See Plaintiff's Deposition Exhibits 38 and 39. Significantly, Plaintiff does not herself contend that she was unable to work or that she had a record of a disabling impairment. See Plaintiff's Deposition, pp. 198-199, 208-209; see also Plaintiff's Memorandum in Opposition to Summary Judgment, pp. 11-12; Complaint, ¶ 43 ["Plaintiff was able to perform her position . . . ."].

---

[16]While citing to these cases, the undersigned recognizes that "[the Fourth Circuit's] opinion in Williams should not be read to create a *per se* rule that a twenty-five pound lifting restriction can *never* constitute a disability. The Supreme Court has made clear that disability determinations require an individualized inquiry. Taylor, 429 F.3d at 463 n. 2.



Rather, Plaintiff bases her ADA claim not on any actual disability, but on the Defendant allegedly having regarded her as having a disability. Cf. MacDonald v. Delta Airlines, Inc., 94 F.3d 1437, 1443 (10th Cir. 1996)(citing Dutcher, 53 F.3d at 727 [holding that the Plaintiff "might have qualified as disabled under the ADA if he could have provided sufficient summary judgment evidence that he was regarded by [the Defendant] as having an impairment that substantially limited a major life activity, whether he actually had such an impairment or not."]; Rhodes v. F.D.I.C., 257 F.3d 373, 391 (4th Cir. 2001).

However, while the evidence reflects that the Defendant was aware of Plaintiff's permanent restrictions, this is not sufficient evidence in and of itself to create an inference that the Defendant "regarded" Plaintiff as having a disabling impairment. Rohan v. Networks Presentations LLC, 375 F.3d 266, 277 n. 19 (4th Cir. 2004)["That [the employer] regarded [the plaintiff] as unable to perform 'the specific role for which she was hired' is, standing alone, insufficient to establish a disability."](quoting Sutton, 527 U.S. 492); Haulbrook v. Michelin North America, Inc., 252 F.3d 696, 703-704 (4th Cir. 2001) ["The fact that an employer is aware of an employee's impairment, without more, is 'insufficient to demonstrate either that the employer regarded the employee as disabled or that perception caused the adverse employment action.'"] (quoting Kelly v. Drexel University, 94 F.3d 102, 109 (3d Cir. 1996)); Sullivan v. River Valley School District, 197 F.3d 804, 810 (6th Cir. 1999), cert. denied, 530 U.S. 1262 (2000) ["[A] defendant employer's perception that health problems are adversely affecting an employee's job performance is not tantamount to regarding that employee as disabled"]; Cohen v. Township of Cheltenham, Pennsylvania, 174 F.Supp.2d 307, 331 n. 18 (E.D.Pa. 2001) ["The court's focus on whether a defendant employer regards an ADA plaintiff as disabled can only mean that the "regarded as" inquiry hinges on a

11



defendant's perceptions."]; Witter v. Delta Air Lines, 138 F.3d 1366, 1370 (11th Cir. 1998) [To proceed under a "regarded as" claim for perceived disability under the § 12102(2) of the ADA, plaintiff would have to show that her employer "regarded [her] as being significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes."]. Further, the Defendant's attempts to accommodate Plaintiff's medical restrictions by assigning her to a temporary light duty job does not give rise to finding that the Defendant "regarded" her as disabled. Dean v. Philip Morris USA Inc., 15 A.D. Cases 269, 2003 WL 21754998 at * 4 (M.D.N.C. 2003)(citing Plant v. Morton Int'l, Inc., 212 F.3d 929, 937-938 (6th Cir. 2000)[employee not "regarded as" disabled simply because employer accommodated employee's medical restrictions]).

The evidence also shows that when Plaintiff presented her permanent restrictions to McClam, she was informed that she would either have to apply for an open and available job compliant with those restrictions, or request an ADA accommodation. See McClam Affidavit, ¶ 10. When Plaintiff then requested an ADA accommodation, it was denied at the store level because the Defendant found that she was not disabled under the ADA. See Plaintiff's Deposition Exhibit 8; McClam Affidavit, ¶ 11. Further, when asked at her deposition, "Is it your testimony that after your workers' compensation case settled, people at Wal-Mart perceived you as being just fine and having no disability?", Plaintiff responded, "I don't think that they consider me having a disability now." See Plaintiff's Deposition, p. 166. Plaintiff was then asked, "did anybody at Wal-Mart ever perceive you as having a disability?", to which she responded, "I don't know. You have to ask them." Id. Plaintiff also has submitted an affidavit wherein she concedes that "during my employment Lilian Deas and Ann McClam contended that I did not have any work restrictions." See Plaintiff's Affidavit, ¶ 24. Hence, Plaintiff's own statements do not reflect that the Defendant perceived



Plaintiff as being disabled, nor has Plaintiff offered evidence to show otherwise that the Defendant had any such perception other than her own speculation. Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980)[Plaintiff's own perception is not relevant]; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)[A party opposing summary judgment "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another"].

In sum, Plaintiff has presented no evidence to support her claim that the Defendant regarded her as having a disability. Nor is there any evidence sufficient to give rise to a genuine issue of fact that she was substantially limited in her major life activity of working. Therefore, the Defendant is entitled to summary judgment on Plaintiff's ADA disability claim.

## II.

## (Hostile Work Environment Claim)

Plaintiff asserts in her second cause of action that she was subjected to a hostile work environment during the time of her employment with the Defendant.[17] To establish a hostile work environment claim, Plaintiff must present evidence to prove the following elements: 1) she is a qualified person with a disability; 2) she was subjected to unwelcome conduct in a work related setting; 3) the conduct complained of was based on her disability; 4) the conduct was sufficiently severe or pervasive to alter her condition of employment and to create an abusive work environment; and 5) the conduct is imputable on some factual basis to her employer. Fox, 247 F.3d at 176-177; cf. Ocheltree v. Scollon Productions, Inc., 308 F.3d 351, 356 (4th Cir. 2002), rehearing en banc, 335 F.3d 325 (4th Cir. 2003), cert. denied, 124 S.Ct. 1406 (2004); Spicer v. Com.of Va. Dep't of

---

[17]The Fourth Circuit Court of Appeals has held that "the ADA, like Title VII, creates a cause of action for hostile work environment harassment." Fox v. General Motors Corp., 247 F.3d 169, 176 (4th Cir. 2001).



Corrections, 66 F.3d 705, 710 (4th Cir. 1995); Brown v. Perry, 184 F.3d 388, 393 (4th Cir. 1999).

The Defendant argues that Plaintiff's hostile work environment claim fails because she has not shown that she has a disability, and the undersigned agrees. See discussion, supra. Since Plaintiff has not shown that she is a qualified person with a disability, her hostile work environment claim should be dismissed.

## III.

## (**Title VII Retaliation Claim**)[18]

With regard to Plaintiff's Title VII retaliation claim, section 704(a) of Title VII, 42 U.S.C. § 2000(e)-3(a)[setting forth the standard for a retaliation claim], provides as follows:

> It shall be an unlawful practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicants for membership, because he has opposed any practice made an unlawful employment practice by *this subchapter*, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under *this subchapter*.

[Emphasis Added].

---

[18]Plaintiff's complaint specifically sets forth that she is pursuing her retaliation claim under Title VII, not the ADA. See Complaint, ¶¶ 94-95. Even after the Defendant pointed out this possible deficiency in its motion for summary judgment, Plaintiff reiterated that she is pursuing this claim under Title VII and argued that she had set forth a claim under Title VII. See Plaintiff's Memorandum in Opposition to Summary Judgment, pp. 17-18. Hence, while being retaliated against for engaging in protected activity relating to a disability could constitute a cause of action under § 503(a) of the ADA; 42 U.S.C. § 12203(a); Plaintiff has chosen to bring her retaliation action under Title VII. See Complaint, ¶¶ 94-95; see also Plaintiff's Memorandum in Opposition to Summary Judgment, pp. 17-18. The Defendant therefore only addressed Plaintiff's retaliation claim under Title VII in its brief, and the undersigned has also addressed this claim only under that statute. In the event the Court were to find that an ADA retaliation claim has been asserted, the Defendant should be provided an opportunity to brief and argue that claim before any ruling thereon.



Retaliation cases under Title VII are subject to the same requirements of proof as are applicable to disparate treatment claims. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985) overruled on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); see also Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). "The employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence. Such a prima facie case consists of three elements: (1) the employee engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action." Id.; Munday v. Waste Management of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997). Once a prima facie case has been presented, the Defendant employer has the burden of producing a legitimate, non-discriminatory reason for its actions. If the employer can produce a legitimate, non-discriminatory reason for its actions, the employee must then demonstrate that the Defendant's proffered reason is pretextural. Id.

Plaintiff's alleged protected activity is her request for an accommodation based on her impairments, and having filed a SCHAC administrative charge. However, this is not protected activity under Title VII, as both of these activities dealt with Plaintiff's alleged or perceived disability. Muszak v. Sears, Roebuck & Co., 63 F.Supp.2d 292, 300 (W.D.N.Y. 1999)["[A] Title VII retaliation claim must be for actions protected by Title VII, and, quite simply (unlike the ADA that has its own retaliation prohibition), Title VII does not protect a request for an accommodation on the basis of an alleged disability"]; Cody v. County of Nassau, No. 08-5127, 2009 WL 2958742 at *1 (2d Cir. Sept. 16, 2009)["At the outset we note that [Plaintiff's] retaliation claim brought pursuant to Title VII fails as a matter of law because although Title VII protects an employee from retaliation resulting from a claim of discrimination based on 'race, color, religion, sex, or national

15



origin,' 42 U.S.C. § 2000e-2, it does not protect an employee on the basis of disability . . . ."]; Fleeger v. Principi, No. 03-735, 2005 WL 2176837 at * 4 (W.D.Pa. Aug. 15, 2005)[Plaintiff has failed to state a retaliation claim under Title VII, because Title VII has nothing to do with discrimination based on an alleged disability].

Therefore, Plaintiff has failed to set forth a retaliation claim under Title VII, and this claim should be dismissed.

## **Conclusion**

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be dismissed.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

October 2, 2009

Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

